**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**ARI GOLD,**

       **Plaintiff,**

**v.**                                   **Civil Action No.  2:21-CV-00150**
                                          **Honorable Thomas E. Johnston**

**CITY OF PARKERSBURG, THOMAS JOYCE
BOBBY MCCLUNG, RICHARD GOFF,
JASON MATTHEWS, SHANE SEMONES,
JOHN DOE NO. 1, JOHN DOE NO. 2,
AND JOHN DOE NO. 3,**

       **Defendants.**

**DEFENDANTS CITY OF PARKERSBURG, THOMAS JOYCE, BOBBY MCCLUNG,
RICHARD GOFF, JASON MATTHEWS, AND SHANE SEMONES'
<u>MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS</u>**

      NOW COME the Defendants, City of Parkersburg, Thomas Joyce, Bobby McClung, Richard Goff, Jason Matthews, and Shane Semones, by counsel, Cy A. Hill, Jr., Allison M. Subacz and Cipriani & Werner, P.C., and hereby submit the following memorandum of law in support of their Motion to Dismiss.

**I.**       <u>**ALLEGATIONS IN THE COMPLAINT**</u>

      On March 5, 2021, Ari Gold instituted a civil action by filing a Complaint in the United States District Court for the Southern District of West Virginia designated Civil Action No. 2:21-cv-00150.  The Complaint was brought pursuant to 42 U.S.C. § 1983, arising out of alleged violations of the Fourth Amendment, and the United States Constitution, as well as seeking injunctive relief from Defendants' commission of an alleged unreasonable search of the Plaintiff's property on February 26, 2021. *See generally* <u>Complaint;</u> ("ECF No. 1").

The Plaintiff's Complaint states that Ari Gold is the Chief Executive Officer of Emanuel's LLC. *Id*. at ¶ 1.   Defendant Thomas Joyce is the Mayor of the City of Parkersburg. *Id*. at ¶2. Defendant Bobby McClung is the Director of Code Administration for the City of Parkersburg. *Id*. at ¶ 3.   Defendant Richard Goff is employed as an Inspector for the Building and Zoning Office for the City of Parkersburg.   *Id*. at ¶ 4.   Defendant Jason Matthews is the Fire Chief for the Parkersburg Fire Department. *Id*. at ¶ 5.   Defendant Shane Semones is employed as a Detective for the Parkersburg Police Department. *Id*. at ¶ 6.

On or about February 26, 2021, Defendants Goff, McClung, Joyce, Semones, and several other unidentified police officers were present at the subject property located at 814-816 Market Street Parkersburg, WV. *Id*. at ¶ 16.   While Plaintiff was not present at the time, an independent contractor who was present, called Plaintiff.   *Id*. at ¶ 16. Plaintiff indicated that he would not consent to a search of the premises without a warrant.  *Id*. at ¶ 17.

Subsequently, Defendants Semones, Goff, McClung, and Matthews went up the fire escape to the door on the second floor. *Id*. at ¶ 23.   Defendant Semones opened the door and the defendants walked inside to perform a search. *Id*.   According to the Complaint, Defendants did not have an administrative warrant or a warrant to search the premises and provided no justification for the search that would amount to an exception to the Fourth Amendment.   *Id*. at ¶ 25.

At some point, Defendants McClung, Goff, Matthews, and Semones left the building, but remained on the premises.   *Id*.   A Labor Inspector with the West Virginia Department of Labor was called to the premises. *Id*. at ¶ 34.   Labor Inspector Marla Neogra from the West Virginia Department of Labor arrived at the premises and spoke to Plaintiff via telephone and to the three independent contractors.   *Id*. at ¶ 35.   Labor Inspector Neogra finished her paperwork and all Defendants left the premises.   *Id*. at ¶ 36.

Defendant McClung prepared a notice that they would return to search the premises Monday March 1, 2021 at 12:00 noon and provided to counsel for the Plaintiff. *Id*. at ¶ 37. Plaintiff, through counsel, informed Defendants Joyce and McClung that they did not have Plaintiff's consent to conduct the search on March 1, 2021 or any time thereafter without a warrant. *Id*. at ¶ 38.

The Complaint sets forth the following causes of actions against the Defendants.

Count One – Unreasonable Search & Seizure in Violation of the Fourth Amendment under 42 U.S.C. § 1983.

Count Two- Bystander Liability

Count Three- Supervisory Liability Under 42 U.S.C. § 1983

Count Four – State Law Negligence Claim

## II.   **STANDARD OF REVIEW**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows the dismissal of an action if it fails to state a claim upon which relief can be granted.  "The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99 [102], 2 L.Ed.2d 80 (1957)." Syl. pt. 3, Chapman v. Kane Transfer Company, 160 W.Va. 530, 236 S.E.2d 207 (1977). Although the Court should accept all well-pleaded allegations and should view the complaint in a light most favorable to Plaintiff, "'[t]he court need not . . . accept unsupported legal conclusions, legal conclusions couched as factual allegations or conclusory factual allegations devoid of any reference to actual events." Collins v. Red Roof Inns, Inc., 248 F.Supp.2d 512, 515-516 (S.D.W.Va. 2003). Although "detailed factual allegations" are not required in the complaint, it is

a requirement that the complaint contain "more than labels or conclusions" a "formulaic recitation of the elements of a cause of action." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 566 U.S. 662, 874 (2009) (Quotation omitted).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id</u>. at 874.  "The plausibility standard is not akin to a "probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id</u>. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" <u>Id</u>.  "'[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'" <u>Id</u>. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id</u>. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]- 'that the pleader is entitled to relief.'" <u>Id</u>.

Here, the Plaintiff has failed to state a viable cause of action against the Defendants.  As noted below, the Defendants are entitled to statutory and/or common law immunity from the Plaintiff's claims.  Alternatively, the Complaint has failed to state any claim upon which relief can be granted as a matter of law.

III.    **LEGAL ARGUMENTS**

A.    **Defendants did not violate Plaintiff's constitutional rights by conducting an administrative search of the premises**

The Plaintiff alleges that the Defendants violated the Fourth Amendment of the United States Constitution by conducting a warrantless search of the premises.  Plaintiff's constitutional

claims fail as a matter as law as the Defendants are permitted under West Virginia law to conduct inspections on premises to aid in the enforcement of any states' law or municipal ordinance.

An expectation of privacy in commercial premises, however, is different from, and indeed less than, a similar expectation in an individual's home. *See* <u>Donovan v. Dewey</u>, 452 U.S. 594, 598-599 (1981). Administrative searches are an exception to the Fourth Amendment's warrant requirement, but they are not an exception to the Fourth Amendment's requirement for reasonableness. <u>Id</u>., 452 U.S. at 598-99. A search is administrative if it has as its aim the furtherance of a regulatory scheme, whether by uncovering specific regulatory violations or by serving the goals of the regulatory scheme. <u>New York v. Burger</u>, 482 U.S. 691 (1987) (Brennan, J., dissenting). The constitutional role of a regulatory scheme in this context is to provide an "adequate substitute for a [search] warrant." <u>Id</u>. (internal quotations omitted). A valid administrative inspection program, "in terms of the certainty and regularity of its application," places the proprietor on notice that the regulatory scheme will be subject to effective enforcement through frequent inspections. See <u>id</u>.; <u>Donovan v. Dewey</u>, 452 U.S. 564 (1980) (the proprietor "cannot help but be aware that his property will be subject to periodic inspections").

As the Supreme Court explained in <u>Camara v. Municipal Court of City and County of San Francisco</u>, 387 U.S. 523, 538, (1967):

> Having concluded that the area inspection is a 'reasonable' search of private property within the meaning of the Fourth Amendment, it is obvious that 'probable cause' to issue a warrant to inspect must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling. Such standards, which will vary with the municipal program being enforced, may be based upon the passage of time, the nature of the building (e.g., a multifamily apartment house), or the condition of the entire area, but they will not necessarily depend upon specific knowledge of the condition of the particular dwelling. It has been suggested that so to vary the probable cause test from the standard applied in criminal cases would be to authorize a 'synthetic search warrant' and thereby to lessen the overall protections of the Fourth Amendment. But we do not agree. The warrant procedure is designed to guarantee that a decision

to search private property is justified by a reasonable governmental interest. But reasonableness is still the ultimate standard. If a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted search warrant.

This requirement of reasonable standards requires first that "absent traditional probable cause, the decision to search a property must be based on some 'neutral criteria.'" Black v. Village of Park Forest, 20 F.Supp.2d 1218, 1225 (N.D. Ill. 1998).

A building owner "cannot help but be aware" that any inspections of construction activities on the premises will be made outside the traditional means of criminal law enforcement. Burger, 482 U.S. at 691.  A warrantless inspection, however, even in the context of a regulated business, will be deemed to be reasonable only so long as three criteria are met. First, there must be a "substantial" government interest that informs the regulatoryCode scheme pursuant to which the inspection is made. Colonnade Catering Corp. v. United States, 397 U.S. 72, 75 (federal interest "in protecting the revenue against various types of fraud").

Second, the warrantless inspections must be "necessary to further [the] regulatory scheme." Donovan v. Dewey, 452 U.S., at 600.  In designing an inspection program, Congress expressly recognized that a warrant requirement could significantly frustrate effective enforcement of the Act. *Id*.

Finally, "the statute's inspection program, in terms of the certainty and regularity of its application, [must] provid[e] a constitutionally adequate substitute for a warrant." Id.  In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers. To perform this first function, the statute must be "sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic

inspections undertaken for specific purposes." <u>Id</u>.  In addition, in defining how a statute limits the discretion of the inspectors, we have observed that it must be "carefully limited in time, place, and scope." <u>United States v. Biswell</u>, 406 U.S., at 315.

In this case, West Virginia law provides municipalities the authority to provide for the entering and inspection of private premises to aid in the enforcement of any states law or municipal ordinance.  The provisions of West Virginia Code § 8-12-15 state:

> The governing body of every municipality shall have plenary power and authority to provide for the entering and inspection of private premises to aid in the enforcement of any state law or municipal ordinance: Provided, that this section shall not be construed as purporting to authorize an unreasonable search and seizure of prohibited by section six, article three of the Constitution of this state.

Accordingly, the City of Parkersburg enacted ordinances under the Building Code which permit the right of entry to inspect premises.  Section 1701.01 of the City Parkersburg Building Code[1] states:

> (a)      Upon presentation of proper credentials, a duly authorized representative of the City Department of Public Works may enter at reasonable times any building, structure, or premises in the City to inspect said building, structure, or premises and to perform any other duty imposed by the State Building Code

> (b)      Said right of entry shall extend to any building, structure, or premises for . . .  whenever said agent or representative has reasonable cause to believe that a building, structure, premises is unsafe, unsanitary, dangerous, or detrimental to believe public safety or welfare in accordance with Section  1705.03.

Article 1709 of the Codified Ordinances of the City require permits and inspections for all electrical work to be performed.  Similarly, Article 1505.16 of the Codified Ordinances of the City provides:

> The Chief of the Fire Department, the chief inspector or any assistant inspector may, at all reasonable hours, enter any building or premises within his jurisdiction for the purpose of making any inspection or investigation which, under the provisions of this article, he believes necessary.

---

[1] A copy of the Building Code is attached hereto as Exhibit 1.

Under West Virginia law and applicable City ordinances, none of the Defendants reasonably believed that they were violating a clearly established constitutional right of the Plaintiff. "The Fourth Amendment does not proscribe all state initiated searches and seizures; it merely proscribes those which are unreasonable." Mazuz v. Maryland, 442 F.3d 217, 224 (4th Cir. 2006) (internal quotation omitted). Searches may only be "unreasonable" when the person searched has an expectation of privacy.

The inspection program authorized under West Virginia law provides a constitutionally adequate substitute for a warrant. There is a substantial government interest in conducting inspections and applying the regulatory scheme under the Building Code in order to ensure the safety of the work and its compliance with those codes. Additionally, searches conducted pursuant to the Building Code may only be conducted in very limited circumstances. *See* § 1701.01. For this reason, a building owner "cannot help but be aware" that inspections of construction activities on the premises will be made. Burger, 482 U.S. at 703. Further, the regulatory framework, which sets forth who may conduct such inspections, notifies premises owners that representatives of the City Department of Public Work are so authorized. See Burger, 482 U.S. at 711 (finding that the statute at issue in that case provided a "constitutionally adequate substitute for a warrant," in part because "it notifie[d] the operator as to who [was] authorized to conduct an inspection").

As the Defendants acted pursuant to authority granted to municipalities under West Virginia law and a valid City Building Code, they did not violate the Plaintiff's Fourth Amendment rights. Accordingly, a dismissal of Counts One, Two, and Three is appropriate.

**B.      Alternatively, the Defendants are entitled to qualified immunity as they did not violate any of Plaintiff's clearly established Fourth Amendment rights in their inspection of the premises.**

As discussed hereinabove, the Defendants maintain that they did not violate Plaintiff's Fourth Amendment rights as their inspection was reasonable and performed in compliance with state law and the Parkersburg Building Code. However, even if the Court determines that the Plaintiff has pled sufficient facts to state a violation of the Fourth Amendment, the Defendants are nonetheless entitled to qualified immunity as they did not violate any of Plaintiff's clearly established Fourth Amendment rights based upon the allegations in the Complaint.

The general immunity standard . . . is the standard first employed by the United States Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982):  '[g]overnment officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"

In ruling on an issue of qualified immunity, a court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). If the allegations do not give rise to a constitutional violation, no further inquiry is necessary. Id. If, on the other hand, a violation can be shown, then the court must determine whether the right was clearly established in the specific context of the case. Id. The United States Supreme Court recently stated, "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question **beyond debate**." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011) (emphasis added).

In Anderson v. Creighton, 483 U.S. 635, 639-640 (1987), the United States Supreme Court described the substantial threshold showing necessary for a defense of qualified immunity. The standard turns on the "objective legal reasonableness" of the official's conduct and protects "all but

the plainly incompetent or those who knowingly violate the law. Harlow v. Fitzgerald, 457 U.S. 800 (19820 and Malley v. Briggs, 475 U.S. 335 (1986). In particular, qualified immunity protects government officials from "bad guesses in gray areas," and it ensures that they may be held personally liable only "for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier v. Katz, 533 U.S. 194, 201 (2001).  Moreover, where "there is a legitimate question as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity." Martin v. St. Mary's Dep't of Soc. Servs., 346 F.3d 502, 505-06 (4th Cir. 2003).

While the Defendants maintain that they did not violate Plaintiff's constitutional rights, the Defendants should nonetheless be entitled to qualified immunity as they did not violate any clearly established constitutional right.  The Defendants are aware of no controlling authority in West Virginia that stands for the proposition that warrantless administrative searches under a valid Building Code inspection program are unconstitutional.  At all times material hereto, the Defendants acted in good faith pursuant to the authority granted them by the City Parkersburg Building Code.  In acting pursuant to a lawful City Building Code, the Defendants did not transgress any "bright lines" or engage in "plainly incompetent" behavior so as to remove their entitlement to qualified immunity.  Accordingly, as the Plaintiff has failed to plead sufficient facts to show that the Defendants violated any clearly established constitutional rights, the Defendants are entitled to qualified immunity.

C.     **The Plaintiff's Complaint fails to plead a supervisory liability claim against Defendant Joyce (Count Three).**

In Count Three, the Plaintiff attempts to plead a supervisory liability claim against Mayor Thomas Joyce based upon the action of his allege subordinates.  However, Count Three fails to plead a cause of action upon which relief can be granted in that so such claim exists.

Supervisory liability under a traditional master/servant relationship in the civil rights context is nonexistent. *See* Robinson v. Pack, 223 W. Va. 828, 679 S.E.2d 660 (2009).  As the district court explained in Mackay v. Lowe, 529 F.Supp. 504 (E.D. Pa. 1982):

> [I]mposition of vicarious liability on supervisory officials for allegedly unconstitutional acts by their subordinates 'is inappropriate because supervisors and their subordinates are fellow servants of the same master-employer . . . and thus the master-servant relationship, a prerequisite for vicarious liability, is lacking between these individuals.'

*Id*. at 505 (quoting Santiago v. City of Philadelphia, 435 F.Supp. 136, 148 (E.D. Pa. 1977)).

In Ashcroft v. Iqbal, 566 U.S. 662 (2009), a case filed by a Pakistani Muslim in connection with his arrest and detention following the September 11, 2001, attacks, the United States Supreme Court addressed the issue of supervisory liability. Addressing the issue of vicarious liability, the high court stated:

> [R]espondent correctly concedes that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

> Id. at 676.

The Supreme Court in Ashcroft expressly rejected the contention that "'knowledge and acquiescence [by supervisors] in their subordinates' use of discriminatory criteria to make classification decisions among detainees'" was sufficient to find that the supervisors had committed

11

a constitutional violation. Id. at 677. Concluding that "the term 'supervisory liability' is a misnomer" in a section 1983 suit or a *Bivens* suit, the high court determined:

> Absent vicarious liability, each Governmental official, his or her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities.

Id. at 677.

As the West Virginia Supreme Court of Appeals stated in Robinson v. Pack, 223 W. Va. 828, 837 679 S.E.2d 660, 669, "As it stands today, the issue of supervisory liability in connection with an alleged civil rights violation is clear: there is none." The Plaintiff has not alleged that Mayor Joyce committed any independent constitutional violations. Rather, he pleads that Mayor Joyce acquiesced in the alleged actions of city employees. Under Ashcroft, this is not enough. According, a dismissal of Count Three against Mayor Joyce is appropriate.

Even should this Honorable Court find that the Plaintiff has pled sufficient allegations to maintain a supervisory liability claim against Mayor Joyce, Count Three still fails as the Plaintiff has failed to plead sufficient allegations to show that the city employees violated the Fourth Amendment so as to impose any such liability in the first place. As set forth in Sections A and B above, the City employees did not commit any constitutional violation to serve as the predicate for any supervisory claim. As such, a dismissal of Count Three is appropriate on this basis as well.

###### D.     The City of Parkersburg cannot be held vicariously liable for the actions of the Defendants as the Defendants' alleged actions were purely intentional in nature.

The Plaintiff alleges in Count Four that City of Parkersburg is vicariously liable for the actions of the individual Defendants. However, under W.Va. Code § 29-12A-4(c)(2), a political

subdivision may be "liable in damages in a civil action for . . . property caused by the negligent acts by their employees while acting within the scope of employment."    The West Virginia Supreme Court has held that a political subdivision cannot be held liable for an employee's intentional acts.  Mallamo v. Town of Rivesville, 197 W.Va. 616, 477 S.E.2d 525 (1996); *see also* Chapman v. Jarrell, 2005 U.S. Dist. LEXIS 31132 (S.D. W.Va. Nov. 16, 2005).  As discussed above, the United States Supreme Court has held that "a claim for negligence cannot be premised solely on a defendant's alleged commission of an intentional tort."  Brown v. J.C. Penney Corp. 521 F. App'x 922, 924 (11th Cir. 2013) (per curiam).  It is abundantly clear from the allegations of the Complaint that the Defendants acted intentionally when they entered the subject premises and not by inadvertence or negligence.  As such, the City of Parkersburg cannot be held vicariously liable for the alleged intentional actions of the individual Defendants pursuant to the Governmental Tort Claims and Insurance Reform Act [W.Va. Code § 29-12A-4(c)(2)],  and well-established West Virginia case law.

      **E.**    **The Plaintiff failed to plead a cognizable negligent supervision and training claim against the City as all of the allegations in the Complaint sound in intentional conduct.**

      Aside from vicarious liability, the Plaintiff attempts to assert that the City negligently supervised and trained its employees.  See Complaint, ¶ 66.  This claim likewise fails as the Plaintiff only pleads that the city employees acted intentionally.

      As Judge Berger has observed, "The Court has not found, and the parties have not cited to, any state authority for a stand-alone claim for negligent training or supervision."  Ball v. Baker, 2012 U.S. Dist. LEXIS 132885, 2012 WL 4119127 *35 (S.D. W. Va. 2012) (dismissing negligent training and supervision claims where supervised employee was alleged to have engaged in intentional conduct). Since West Virginia law does not recognize a stand-alone cause of action for

negligent supervision, "a claim for negligent supervision requires a separate finding of negligence on the part of the employee being supervised." Heslep v. Americans for African Adoptions, Inc., 2012 U.S. Dist. LEXIS 120839, 2012 WL 3686769, *12 (N. D. W. Va. 2012) (dismissing negligent training and supervision claims where supervised employees were alleged to have engaged in intentional conduct), Selders v. MegaCorp Logistics, LLC, 2014 U.S. Dist. LEXIS 192474 (Bailey, John Preston) ("Because the alleged acts in the Amended Complaint were intentional, the plaintiff has not alleged negligence 'as required to sustain a cause of action for negligent supervision'").

In this case, this "separate finding of negligence on the part of the employee[s] being supervised" is fatally absent. Plaintiff has not plead that the city employees acted negligently. Instead, the Plaintiff has pled throughout his Complaint only intentional conduct. Accordingly, a dismissal of Count Four is also appropriate on this basis.

WHEREFORE, for the reasons articulated above, the Defendants City of Parkersburg, Thomas Joyce, Bobby McClung, Richard Goff, Jason Matthews, and Shane Semones respectfully move this Honorable Court to dismiss all of Plaintiff's claims against them and for any other relief deemed appropriate by the Court.

_/s/ Cy A. Hill, Jr._____
**Cy A. Hill, Jr. (WVSB ID No. 8816)**
**Allison M. Subacz (WVSB ID No. 11378)**
**Cipriani & Werner, P.C.**
**Laidley Tower**
**500 Lee Street East, Suite 900**
**Charleston, WV 25301**
**(304) 341-0500**
**(304) 341-0507 (fax)**
**chill@c-wlaw.com**
**asubacz@c-wlaw.com**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**ARI GOLD,**

       **Plaintiff,**

**v.**                                      **Civil Action No.  2:21-CV-00150
Honorable Thomas E. Johnston**

**CITY OF PARKERSBURG, THOMAS JOYCE
BOBBY MCCLUNG, RICHARD GOFF,
JASON MATTHEWS, SHANE SEMONES,
JOHN DOE NO. 1, JOHN DOE NO. 2,
AND JOHN DOE NO. 3,**

       **Defendants.**

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on this 31st day of March, 2021, I caused service of the foregoing **DEFENDANTS CITY OF PARKERSBURG, THOMAS JOYCE, BOBBY MCCLUNG, RICHARD GOFF, JASON MATTHEWS, AND SHANE SEMONES' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS** to be made upon counsel of record by Electronic Mail:

Anne C. Labes, Esquire
Anne C. Labes, Attorney at Law
1160 Bethel Road
Marietta, OH 45750
*Counsel for Plaintiff*

                                */s/ Cy A. Hill, Jr.*
                                **Cy A. Hill, Jr. (WVSB ID No. 8816)
Allison M. Subacz (WVSB ID No. 11378)**